**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DWAYNE JOY,**

                                   **Plaintiff,**

                                     v.                                                    5:09-CV-841
                                                                                    (FJS/ATB)

**STATE OF NEW YORK; BRIAN FISCHER,**
**individually and as Commissioner of the New**
**York State Department of Correctional Services;**
**COUNTY OF ONONDAGA; and AGENTS OF**
**THE COUNTY OF ONONDAGA,**

                                  **Defendants.**
_____

**APPEARANCES**                                      **OF COUNSEL**

**CARROLL & CARROLL**                **WOODRUFF LEE CARROLL,**
**LAWYERS, P.C.**                            **ESQ.**
The Galleries
441 South Salina Street
Syracuse, New York 13202-0352
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**         **KELLY L. MUNKWITZ, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendant New York State and
Defendant Brian Fischer

**ONONDAGA COUNTY LAW DEPARTMENT**    **KAREN ANN BLESKOSKI, ESQ.**
421 Montgomery Street, 10th Floor
Syracuse, New York 13202

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

On July 23, 2009, Plaintiff filed this action under 42 U.S.C. § 1983 alleging violations of his civil rights resulting from the administrative imposition of post-release supervision and his subsequent arrest for violating the terms of his supervision. In addition to these federal Constitutional claims, Plaintiff alleges violations of section 8-B of the Court of Claims Act, false imprisonment, *prima facie* tort, and New York State constitutional violations.

Currently before the Court is Defendant New York State's and Defendant Brian Fischer's ("State Defendants") motion to dismiss and Defendant Onondaga County's and Defendants Agents of Onondaga County's ("County Defendants") motion for a more definite statement.

## II. BACKGROUND[1]

Plaintiff was convicted of Burglary and Grand Larceny, for which he served a determinate New York State prison term of seven years. At the conclusion of his sentence, Plaintiff was placed on post-release supervision. The New York State sentencing court did not impose a period of supervised release at the time of judgment. Pursuant to New York Penal Law § 70.45(1), the Department of Correctional Services ("DOCS") "administratively imposed" post-release supervision, which was mandated as part of every determinate sentence.

While on post-release supervision, Plaintiff violated the terms of his release on three separate occasions and was subsequently returned to custody. Plaintiff was released from custody after a successful New York State habeas corpus proceeding. Plaintiff now brings this

---

[1] Unless noted otherwise, the parties do not dispute the facts.

civil rights action seeking recompense for the allegedly illegal imposition of post-release supervision and the periods of incarceration resulting from his violations of the terms of his illegally-imposed post-release supervision.

### III. DISCUSSION

**A.     State Defendants' motion to dismiss**

*1. Standard of review for a Rule 12(b)(6) motion*

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the legal sufficiency of the non-movant's pleading, using as a backdrop a pleading standard which is particularly unexacting in its requirements. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering a pleading's legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is

entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955).

### 2. *Plaintiff's claims against Defendant State of New York and Defendant Fischer in his official capacity*

The Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90-100 (1984).  It is well-settled that states are not "persons" under section 1983 and, therefore, that statute does not abrogate a state's Eleventh Amendment immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Moreover, this immunity extends to state agencies and state officials sued in their official capacities. *See Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289, 292 (2d Cir. 1996) (quotation omitted).

In the present matter, although Plaintiff does not oppose the State Defendants' motion to dismiss Defendant New York State on Eleventh Amendment immunity grounds, he does oppose the dismissal of Defendant Fischer in his official capacity.  This argument has no merit because

the case law is well-established that Plaintiff cannot sue Defendant Fischer in his official capacity.

Accordingly, the Court grants the State Defendants' motion to dismiss Defendant New York State and Defendant Fischer in his official capacity.

### *3.  Plaintiff's section 1983 claims against Defendant Fischer in his individual capacity*

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)) (other citation omitted).

#### *a. Personal involvement*

Personal involvement in the alleged constitutional violation is a prerequisite to finding a supervisory official liable under section 1983. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quotations omitted). A supervisory official is personally involved in the violation of a

plaintiff's constitutional rights if he (1) directly participates in the infraction; (2) fails to remedy the wrong after learning of the violation; (3) creates, or allows to continue, an unconstitutional practice; or (4) is grossly negligent in the management of subordinates who caused the violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Here, Plaintiff has not sufficiently alleged that Defendant Fischer was personally involved in the alleged violation of his rights. The only allegation in Plaintiff's complaint that could be considered to allege Defendant Fischer's personal involvement states that

> [s]aid actions were a policy of the State of New York and the Department of Corrections and said agents of the State of New York:
>
> (a) after learning of the violation through a report or appeal[,] defendants failed to remedy the wrong:
>
> (b) they created the policy or custom under which the unconstitutional practices occurred, or allowed such policy [or] custom to continue;
>
> (c) defendants were grossly negligent in managing subordinates who caused the unlawful condition or event.
>
> (d) opposed the lawful release of the Defendant [sic] until they commenced a habeas corpus proceeding

(e) acted recklessly and intentionally in disregard of the Plaintiff's Constitutional rights in allowing and pursuing the aforesaid as a policy of the State of New York.

*See* Complaint at ¶ 17.

These allegations, although clearly demonstrating Plaintiff's counsel's understanding of the prerequisites to establishing personal involvement, are insufficient to survive a motion to dismiss. In *Iqbal*, the plaintiff's complaint alleged that the defendants "'knew of, condoned and

willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race and/or national origin and for no legitimate penological interest.'" *Iqbal*, 129 S. Ct. at 1951 (quotation omitted). Dismissing the complaint, the Supreme Court held that such bare allegations "amount to nothing more than a 'formulaic recitation of the elements[.]'" *Id.*

In the present matter, Plaintiff has not satisfactorily alleged that Defendant Fischer was personally involved in the conduct concerning the revocation of Plaintiff's post-release supervision. First, Plaintiff does not allege that Defendant Fischer knew that Plaintiff had been arrested for a post-release supervision violation. Second, there is no allegation that Defendant Fischer was involved in the parole revocation hearing that ultimately led to Plaintiff's incarceration. Although Plaintiff could argue that the parole board violated his constitutional rights by incarcerating him for violating conditions of his post-release supervision which a sentencing judge did not impose, parole boards are absolutely immune from liability for their decisions. *See King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999) (quotation and other citation omitted). Third, Plaintiff does not allege that DOCS or DOCS personnel had the authority to release Plaintiff once he was incarcerated.

As such, the Court grants the State Defendants' motion to dismiss the claims against Defendant Fischer for lack of personal involvement.[2]

---

[2] Alternatively, the Court grants the State Defendants' motion to dismiss the claims against Defendant Fischer on the ground that he is entitled to qualified immunity.

On August 6, 1988, the New York state legislature enacted "Jenna's Law," a statute that ended indeterminate sentences for criminal defendants convicted of violent felonies. *See* N.Y. Penal Law § 70.02. Jenna's Law also imposed a schedule of mandatory terms of post-release
(continued...)

---

[2](...continued)
parole supervision for certain violent felony offenders. *See id.* at § 70.45(1).

Due to the mandatory nature of the post-release supervision that Jenna's Law created, New York state courts often neglected to declare on the record what the defendant's post-release supervision obligations would be. In such cases, DOCS would administratively impose the post-release supervision on the defendant so that his sentence would comply with the law, as was the case here.

For several years, New York state courts routinely upheld the administrative imposition of this mandatory post-release supervision. *See, e.g., Deal v. Goord*, 8 A.D.3d 769, 769-70 (3d Dep't 2004) (citing *People v. Lindsey*, 302 A.D.2d 128, 129 (3d Dep't 2003), *lv. denied* 100 N.Y.2d 583 (2003)) (other citations omitted). On June 9, 2006, however, the Second Circuit held that DOCS' administrative imposition of post-release supervision violated the Constitution's Due Process Clause. *See Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), *reh'g denied*, 462 F.3d 147 (2d Cir. 2006), *cert. denied*, 551 U.S. 1159 (2007).

After the Second Circuit's decision in *Earley*, the New York state courts continued to rule that post-release supervision was an automatic part of a sentence subject to Jenna's Law and noted that, because DOCS was "only enforcing, not imposing, a part of petitioner's sentence which was automatically included by statute, they have not performed any judicial function, making prohibition an unavailable remedy." *Garner v. N.Y.S. Dep't of Corr. Servs.*, 39 A.D.3d 1019, 1019 (3d Dep't 2007) (citation omitted); *see also People v. Thomas*, 35 A.D.3d 192, 193-94 (1st Dep't 2006) (citation omitted). Even though *Earley* was decided on June 9, 2006, it was not until April 29, 2008, that the New York State Court of Appeals held that the New York Criminal Procedure Law did not permit the administrative imposition of post-release supervision. *See Garner v. N.Y.S. Dep't of Corr. Servs.*, 10 N.Y.3d 358, 363 (2008); *People v. Sparber*, 10 N.Y.3d 457, 460-61 (2008) (citation omitted). After the New York Court of Appeals' decisions, on June 30, 2008, the New York legislature passed N.Y. Corrections Law § 601-d, creating a procedure by which individuals who had post-release supervision administratively imposed could be re-sentenced so that their sentences would comply with Jenna's Law. This law, for the first time, imposed on Defendant Fischer and DOCS an obligation to, and provided a means by which DOCS could, petition the state sentencing court to correct an improperly imposed sentence to include post-release supervision. *See* N.Y. Corr. Law § 601-d.

Considering the state courts' confusion over the law, it cannot be said that, during the relevant time period, any right that Plaintiff may have had was a clearly established one of which a reasonable person would have known. Plaintiff was released from prison and placed on his administratively-imposed post-release supervision on June 28, 2006. Thereafter, Plaintiff was released from his term of incarceration from his post-release supervision violations on May 27, 2008. *See* Affidavit of Woodruff Lee Carroll dated November 2, 2008 ("Carroll Aff."), at ¶ 5.

(continued...)

### 4.  *Plaintiff's state-law claims against Defendant Fischer*

In addition to Plaintiff's federal claims, he asserts several New York state-law claims, including (1) unjust conviction and imprisonment pursuant to section 8-b of the New York State Court of Claims Act; (2) false imprisonment; (3) *prima facie* tort; and (4) New York State constitutional violations.  *See* Complaint at 3-6.  Defendant Fischer claims that section 24 of the New York State Correction Law bars these state-law claims.

Section 24 of the New York State Correction Law provides as follows:

> 1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
>
> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Corr. Law § 24.

Essentially, this statute precludes inmates from bringing civil suits against "corrections officers in their personal capacities" in state courts.  *See Cepeda v. Coughlin*, 128 A.D.2d 995,

---

²(...continued)
As the case law makes clear, the implications of *Earley* and the impact that it would have on prisoners in Plaintiff's position was a source of great confusion.  As such, Defendant Fischer is entitled to qualified immunity.  *See Rodriguez v. Fischer*, No. 08-CV-4662, 2010 WL 438421, *6 (E.D.N.Y. Feb. 3, 2010) (applying qualified immunity defense to DOCS officers who incarcerated the plaintiff for violations of an administratively-imposed post-release supervision because New York courts continued to uphold the practice even after *Earley* was decided, allowing the defendants to rely on a presumptively-valid state statute (citations omitted)); *see also Ruffins v. Dep't of Corr. Servs.*, 701 F. Supp. 2d 385, 408 (E.D.N.Y. 2010) (same).

997 (3d Dep't 1987). "In applying pendent jurisdiction, federal courts are bound to apply state substantive law to the state claim." *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (citations omitted). "If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendant jurisdiction . . . must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court." *Id.* (citation omitted).

In 2009, the United States Supreme Court held that section 24, to the extent that it relegates to the New York State Court of Claims civil rights actions brought pursuant to 42 U.S.C. § 1983, is inconsistent with the Supremacy Clause and is, therefore, unconstitutional. *See Haywood v. Drown*, 129 S. Ct. 2108 (2009). The *Haywood* Court held that New York State, having created courts of general jurisdiction that routinely hear section 1983 actions against all types of state actors, "is not at liberty to shut the courthouse door to federal claims that it considers at odds with its local policy." *Id.* at 2117 (footnote omitted).

Although the *Haywood* decision found section 24 to be in violation of the Supremacy Clause, it did so only with respect to claims brought under section 1983 – a federal statute. *See id.* at 2117-18. After *Haywood*, the courts of this district have unanimously held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state-law claims against DOCS officials. *See, e.g., Crump v. Ekpe*, No. 9:07-CV-1331, 2010 WL 502762, *18 (N.D.N.Y. Feb. 8, 2010) (quoting *May v. Donneli*, 9:06-cv-437, 2009 WL 3049613, at *5 (N.D.N.Y. Sept. 18, 2009) (Sharpe, J. & Treece, M.J.); *see also Tafari v. McCarthy*, No. 9:07-CV-654, ___ F. Supp. 2d ___, 2010 WL 2044705, *51 (N.D.N.Y. May 24, 2010) (citations omitted).

Since Plaintiff's allegations against Defendant Fischer clearly fall within the scope of his duties as Commissioner of DOCS, the Court finds that it does not have jurisdiction to hear these pendent state-law claims and, therefore, grants the State Defendants motion to dismiss these claims. *See May*, 2009 WL 3049613, *5 (citations omitted).

### B.     County Defendants' motion for a more definite statement

Pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, the County Defendants move for a more definite statement of the complaint. *See* Dkt. No. 10-1 at 1. First, the County Defendants claim that it is impossible to determine whether any or all of Plaintiff's claims are time barred because Plaintiff fails to allege any dates on which the alleged violations occurred. *See id.* at 2. Second, they assert that they cannot determine who or what agency allegedly placed Plaintiff on post-release supervision, the term of Plaintiff's sentence upon which he bases his allegations of illegal post-release supervision, and which agency allegedly imprisoned him after he violated the terms of his post-release supervision. *See id.* The County Defendants assert that it is impossible to tell what role, if any, they played in the alleged violations. *See id.* In response, Plaintiff does not appear to oppose the County Defendants' motion but asserts that the documents/information are in Defendants' control and that, therefore, he cannot "particularize accurately without them." *See* Dkt. No. 13 at 1.

It is unclear how Plaintiff can hold the County Defendants liable for any of the alleged constitutional and statutory violations. The only allegation in the complaint that directly relates to the County Defendants states that "[s]aid Onondaga County repeated[ly] placed the plaintiff on post sentence supervision and continued to enforce said post sentence supervision long after

-11-

they knew or ought to have known that they were prohibited from doing so under federal law." *See* Complaint at ¶ 18.

Section 70.45 of the New York State Penal Law states that the "board of parole shall establish and impose conditions of post-release supervision" for persons sentenced to determinate prison sentences. *See* N.Y. Penal Law § 70.45(3). Moreover, section 500-c of the New York State Correction Law provides that the county officer responsible for administering the county's correctional facilities "shall not be held personally liable for receiving or detaining any person under and in accordance with a commitment issued by a judicial officer; nor shall he, without lawful authority, let any such person out of jail." N.Y. Corr. Law § 500-c(4). Further, the law states that, "[n]otwithstanding any other provision of law, in the county of Onondaga all of the provisions of this section shall equally apply in any case where the sheriff is holding a person under arrest, for arraignment, prior to commitment, as if such person had been judicially committed to the custody of the sheriff and such person may be held in the Onondaga county jail." *Id.* § at 501-c(6).

First, the State, not the County, is responsible for the imposition and enforcement of post-release supervision. Further, to the extent that Plaintiff may allege that the County Defendants violated his rights by incarcerating him pursuant to a State Parole detainer, section 501-c renders the County immune from any liability. Moreover, Plaintiff's counsel has admitted that he believes that the County is not a proper party to this action. *See* Reply Affidavit of Karen A. Bleskoski sworn to November 4, 2009 ("Bleskoski Aff."), at Exhibit "D." Finally, as in *Iqbal*, Plaintiff's complaint against the County Defendants is nothing more than a mere "formulaic recitation" of the required elements. *See Iqbal*, 129 S. Ct. at 1951. Plaintiff provides nothing

more than mere conclusory allegations and, significantly, omits what county agency or individual was involved in his alleged constitutional violations, when they allegedly violated his rights, and how it was that the County Defendants placed him on post-release supervision when such supervision is statutorily delegated to the State.

Accordingly, the Court denies the County Defendants' motion for a more definite statement as moot and, *sua sponte*, dismisses the action against the County Defendants as meritless.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the State Defendants' motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that all claims against the County Defendants are **DISMISSED** *sua sponte*; and the Court further

**ORDERS** that the County Defendants' motion for a more definite statement is **DENIED** as moot; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case.

**IT IS SO ORDERED.**

Dated: September 30, 2010
         Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge